# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2053
_____

United States of America,

*Plaintiff - Appellee*,

v.

Alexzandra Blanco,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: March 20, 2026
Filed: August 10, 2026
_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

COLLOTON, Chief Judge.

A jury convicted Alexzandra Blanco on two counts of conspiracy to distribute fentanyl. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. On appeal, Blanco challenges certain evidentiary rulings of the district court[1] and argues that the court

---

[1]The Honorable Brian C. Buescher, now Chief Judge, United States District Court for the District of Nebraska.

erred by denying her motions for judgment of acquittal. We conclude that there is no reversible error, and affirm the judgment.

## I.

On March 18, 2023, Alexzandra Blanco and Mathisen Boldt went to the apartment of a mutual female friend. Blanco's romantic partner, Tremain Monroe, was present. Monroe handed fentanyl pills to Blanco, and Blanco crushed them into powder. Blanco then gave Boldt a rolled-up dollar bill, and Boldt used it to consume the fentanyl.

Boldt experienced an overdose, and an ambulance transported her to the hospital. Boldt recovered and then became a confidential informant for law enforcement.

Law enforcement officers arranged three controlled purchases of fentanyl from Monroe and Blanco between April 4 and April 26, 2023. On the first occasion, Boldt met with Monroe and Blanco in Monroe's vehicle. Monroe sat in the driver's seat and handed fentanyl to Boldt in the back, while Blanco sat in the front passenger's seat.

On the second, Boldt met Monroe at a gas station, and Monroe drove her to his residence. At the residence, Boldt met with Monroe and Blanco in a basement bedroom. While Blanco lay in bed conversing with Boldt, Monroe handed fentanyl pills to Boldt.

For the third controlled purchase, Boldt drove to Monroe's residence. Boldt again met Monroe and Blanco in the basement bedroom. Monroe handed fentanyl pills to Boldt while Blanco walked around the bedroom.

On May 3, officers executed a search warrant at the residence of Blanco and Monroe. In the basement bedroom, officers seized prescription pill bottles, fentanyl pills, packages of naloxone, laxatives, and cash. In a laundry room across the hall from the basement bedroom, officers seized approximately five pounds of methamphetamine.

A grand jury charged Blanco and Monroe with conspiracy to distribute fentanyl that resulted in serious bodily injury to Boldt on March 18. The grand jury also charged the defendants with conspiracy to distribute fentanyl from April 4 through May 3, 2023. Monroe pleaded guilty, and Blanco proceeded to trial.

A jury found Blanco guilty on both counts. At sentencing, the district court calculated an advisory guideline range of 262 to 327 months' imprisonment, but varied downward and sentenced Blanco to the statutory minimum term of 240 months.

II.

Blanco first challenges the district court's admission of evidence related to two prescription bottles that were seized from her residence on May 3. At trial, an officer testified that he located unlabeled prescription pill bottles in the window well of the bedroom. On appeal, Blanco argues that evidence of the bottles was irrelevant and unfairly prejudicial.

The district court did not abuse its discretion in admitting the evidence. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). The charges in this case concerned possession and distribution of fentanyl, and the presence of pill bottles tended to make it more likely that Blanco possessed illicit drugs such as fentanyl that could be stored in the

unlabeled bottles.  The evidence was also relevant to show the total picture of the room in which evidence was seized.  There was not a danger of unfair prejudice that substantially outweighed the evidence's probative value.  *See* Fed. R. Evid. 403.  The parties were able to debate the significance of the pill bottles, and the presence of the bottles was not the sort of inflammatory evidence that may have diverted the jury's attention from material issues in the trial.

Blanco next challenges the district court's admission of Boldt's testimony that people who wanted drugs from Monroe could send a text message to Blanco, and she would "reply to them or . . . tell [Monroe] the information that she had heard from the person texting her."  Blanco argues that the testimony was inadmissible hearsay and was admitted without proper foundation.

The district court did not abuse its discretion in admitting the evidence.  There was a sufficient basis to conclude that Boldt had sufficient personal knowledge to testify about these matters.  Boldt was a good friend of Blanco's since the fifth grade.  Boldt testified that she was friendly with both Monroe and Blanco during the time period of the charged conduct.  She purchased drugs from the couple and was in a position to know about their routines.  Boldt placed the communications during the course of the conspiracy, and it was not necessary for the witness to provide specific dates and times to establish a foundation.  The evidence also was not hearsay.  Boldt was in direct communication with Blanco and Monroe, so it was reasonable to infer that she reported admissions by Blanco or statements by Monroe made in furtherance of the drug trafficking conspiracy.  *See* Fed. R. Evid. 801(d)(2)(A), (E).

Blanco challenges the district court's admission of testimony that officers seized five pounds of methamphetamine from a laundry room that was across the hall from the basement bedroom in her residence.  The district court determined that the evidence was admissible as *res gestae* evidence—that is, evidence of uncharged wrongful conduct that was "offered for the purpose of providing the context in which

-4-

the charged crime occurred." *United States v. Campbell*, 6 F.4th 764, 771 (8th Cir. 2014) (internal quotation omitted). This type of evidence is admissible because it "completes the story or provides a total picture of the charged crime." *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006) (internal quotations omitted).

We see no abuse of discretion in admitting the evidence. The methamphetamine was seized from a room that was right across the hall from the room in which Boldt obtained drugs from Blanco and Monroe. The evidence completed the story of the investigation and was not unfairly prejudicial to Blanco. She was not charged with a methamphetamine offense, and the jury was aware from other evidence that Monroe was a drug trafficker.

Even if the district court erred on any of these evidentiary matters, we conclude alternatively that any error was harmless. As discussed below, the government presented ample evidence of Blanco's involvement in the conspiracy to distribute fentanyl, including evidence of controlled purchases of fentanyl. We are confident that these disputed pieces of evidence did not substantially influence the verdict.

### III.

Blanco argues that the district court erred in denying her motions for judgment of acquittal. We will affirm the district court's ruling if a reasonable jury, viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt. *United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022).

There was ample evidence that Blanco conspired with Monroe to distribute fentanyl that resulted in serious bodily injury to Boldt on March 18. Boldt testified that Monroe gave fentanyl pills to Blanco, that Blanco crushed them into powder, and that Blanco handed Boldt a rolled-up dollar bill to facilitate her ingestion of the drug.

Boldt then experienced an overdose that required emergency medical attention. The jury reasonably found that Blanco and Monroe entered into the agreement to distribute fentanyl, and that it caused serious bodily injury to Boldt.

There was also sufficient evidence to support the finding that Blanco conspired with Monroe to distribute fentanyl between April 4 and May 3, 2023, while Boldt was acting as a confidential informant. Boldt made three controlled purchases of fentanyl during that period, and a jury reasonably could find that Blanco participated with Monroe in distributing the drugs. Officers then seized fentanyl from a bedroom occupied by Blanco and Monroe in sufficient quantity to support an inference of trafficking. Officers also seized a large amount of cash from the couple's bed, and the jury reasonably could infer that the cash supported an inference of drug trafficking.

Blanco blames the drug trafficking on Monroe and suggests that she was an innocent bystander. But Boldt testified that Blanco was present during the three controlled transactions, knew the purpose of the meetings, and was part of the conversations, including one decision on how many pills to distribute to Boldt. Boldt also explained that Blanco was unemployed and living with Monroe during this period. A jury reasonably could infer that Blanco relied on the proceeds of drug trafficking and her conspiratorial activity with Monroe to sustain her standard of living. Boldt's testimony, together with the evidence seized from Blanco's shared bedroom with Monroe, was sufficient to support a finding that Blanco knowingly joined and participated in the charged conspiracy.

The judgment of the district court is affirmed.

_____